### YGNACIO GOMEZ v. THE STATE.

No. 22343. Delivered December 16, 1942.

The opinion states the case.

*C. H. Gilmer,* of Rocksprings, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a period of seven years.

The State's theory was that the killing was a deliberate murder with malice aforethought, while that of the appellant was self-defense.

The State's evidence, briefly stated, shows that on the afternoon of December 24, 1940, the deceased and appellant were in Tino Perez's beer tavern at which time the deceased threw a beer bottle at appellant but it missed him, struck the cash register and broke. Perez and others who were present interceded and prevented any further trouble. Appellant was requested to leave the premises and did so. About 11:00 P. M., accompanied by three other parties, he came back into the beer tavern, walked up to the counter and each ordered a bottle of beer. At that time the deceased, his brother and one or two friends were sitting in a booth partaking of refreshments. While appellant and his companions were still at the counter engaged in drinking, the deceased, accompanied by his brother, emerged from the booth and started toward the door with two bottles of wine in a paper bag which he carried in his hand; and when he noticed appellant standing at the counter he turned half way around and said "Que huvo chingoncito." Appellant replied: "Que huvo" and then drew a pistol and shot the deceased three times. One shot took effect in the chest, one in the hip and one in the small of the back.

Appellant testified that about three months preceding the night of the fatal shooting the deceased came to his home one night and asked him about his relations with a little girl. Appellant denied any knowledge thereof, whereupon deceased said that some day he was going to kill him if he did not leave the little girl alone; that about three weeks prior to the night of the homicide, Jose Arispe, a brother of the deceased, came to his house at night, woke him up and told him that the deceased was going to kill him (appellant); that on the night of the killing when the deceased and his companions came from the booth, he turned half way around, looked toward him (appellant) and remarked, "Howdy chingon," and was trying to get something out of his pocket, whereupon he (appellant) drew his pistol and fired because he knew that the deceased was a bad man and he was afraid that the deceased was going to kill him.

It is obvious that an issue of fact was raised as to whether or not the killing was with malice aforethought or in self-defense, and this issue was determined by the jury adversely to the appellant.

Bill of Exception No. 1 reflects the following occurrence: While appellant's counsel was cross-examining the State's wit-

ness, Tino .Perez, he was asked as to what his opinion was as to the character and reputation of the deceased, George Arispe, as a quarrelsome and dangerous man. The State objected thereto on the ground that the question called for a conclusion on the part of the witness, was not a proper question and that a sufficient predicate had not been laid therefor. The court sustained the objection and appellant excepted. We think the court's ruling was proper. If appellant sought to show that the deceased's reputation as a quarrelsome and dangerous man was bad, he should first have· shown by the witness that he knew the reputation of the deceased in respect thereto, and if he answered that he did, then he may have inquired of him as to whether it was good or bad. The individual opinion of the witness as to the character of the deceased would not show his general reputation.

Bill of Exception No. 2 shows that while appellant was testifying in his own behalf his counsel sought to elicit from him the fact that Felix Arispe, a brother of the deceased, was present when the deceased was shot; that from his knowledge of the character and reputation of Felix Arispe, he knew that Felix was mixed up in some trouble in Schleicher and Sutton Counties growing out of the murder of the Calcott family in September, 1940, and that he was under indictment charging him with aiding the murderer to escape and having assisted in hiding or suppressing evidence of the murder. To· which the State objected on the ground that said testimony was irrelevant and immaterial. There is no evidence from any source that Felix Arispe did or said anything at the time of the shooting or prior or subsequent thereto. The mere fact that he was present at the scene of the homicide and that he may have aided one to escape who had committed murder at another time and place, and the further fact that he may have suppressed evidence would not make such testimony relevant or pertinent in this case.

By Bill of Exception No. 3 appellant complains of the action of the trial court in declining to give his special requested instruction to the effect that if the jury believed that the deceased died as a result of his own neglect in failing to procure or obtain or continue proper treatment for himself and that such neglect or failure on his part caused his death, or if they had a reasonable doubt thereof, to acquit him.

The court, in Paragraph 23 of his main charge, instructed the jury that if they believed from the testimony, or if they had a reasonable doubt thereof, that there was gross negligence or manifestly improper treatment of the said George Arispe by some person or persons other than him, the said Ygnacio Gomez, between the time of the infliction of the wounds and in his death, which gross negligence or improper treatment, if any, caused the death of the said George Arispe, then they could not convict the defendant of murder; or if they believed from the evidence that the wounds inflicted upon the said George Arispe were not of themselves mortal and that the said George Arispe died in consequence of gross neglect or improper treatment by others * * * "then you will find the defendant not guilty of murder." It will be noted that the trial court charged the jury on the subject of negligence or improper treatment of the injured party by others, and if they so found, then they should acquit him of murder; but, notwithstanding such instruction, appellant wanted the court to tell the jury in addition thereto as requested in his special charge. We find no evidence in the record which shows, or even tends to show, that the injured party was negligent in obtaining or in failing to procure or continue for himself proper treatment. The doctor, who was immediately called to the beer tavern where the injured party lay prone on the floor, testified that he caused him to be taken home and the next day he was carried to a hospital at Kerrville where X-ray pictures were taken which disclosed the course of the bullets and the location of one of them; that an operation was performed and the bladder, which was punctured by a bullet, was packed and an opening left for the urine to drain out, but the bullet which entered the hip was not removed; that it was lodged near a large blood vessel and caused an abscess which in turn caused the tissues of the blood vessel to slough off and this produced a hemorrhage which resulted in death due to the loss of blood. We think that the court's charge was a fair application of the law to the facts.

Appellant complains of the court's action in declining to give his special requested instruction to the effect that any person who has been threatened with death or serious bodily injury has a right to arm himself against an anticipated or threatened attack, and if the jury believed from the evidence that the deceased had threatened Ygnacio Gomez with death or serious bodily injury, then and in such event the defendant had a

right to arm himself in anticipation of an attack, etc. In our opinion, the failure of the court to give such a charge does not show any error inasmuch as the court, in his main charge, did not limit appellant's right of self-defense by a charge on provoking a difficulty or otherwise, but gave him the perfect and unrestricted right of self-defense on every defensive issue. See Hyles v. State, 130 Tex. Cr. R. 154; McCoy v. State, 138 Tex. Cr. R. 138.

Appellant also complains of the action of the trial court in overruling his amended motion for new trial based on certain alleged errors committed by the court during the trial in that he was deprived of the testimony of Andres Lara, a material witness in his behalf. There is nothing in the record which shows that appellant made any application for a continuance or for a postponement of the trial or that he announced ready subject to the appearance of said desired witness. It seems from the record that he knew what the absent witness would have testified to if present. However, he announced ready for trial with full knowledge of his absence. Under such circumstances the court was fully justified in overruling the motion for new trial.

Finding no reversible error in the record the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.